IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL HARKINS,

    Plaintiff,

vs.                                          No. CIV 01-0293 JHG/RLP

ELITE OUTFITTERS, INC.,
a New Mexico Corporation, and
BRIAN NEWEL and JOHNNY
HUGHES,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment, filed February 4, 2002. Pursuant to Fed.R.Civ.P. 56, Defendants move the Court for an Order dismissing Plaintiff's claims. In support of their motion, Defendants rely on the Equine Liability Act (the Act), N.M.Stat.Ann. § 42-13-2 *et seq.* Specifically, Defendants contend Plaintiff's claims are precluded by §42-13-4A of the Act. Having reviewed the motion, the memoranda in support and in opposition, and the applicable law, the Court finds that the motion is well taken and will be GRANTED.

### I. Undisputed Facts

Plaintiff signed on as a paid guest with an Elite Outfitters Elk Hunt for a five day elk archery hunt in the Smoky Ranger District of the Lincoln National Forest. Defendant Elite Outfitters, Inc. is a corporation doing business as a hunting guide outfitter in New Mexico. Defendants Johnny Hughes and Brian Newell are guides for Defendant Elite Outfitters, Inc.

Defendants Hughes and Newell informed Plaintiff they would be using mules for the approximate five mile trek to the base camp.  Prior to this hunting trip, Plaintiff had been on three other horseback elk hunting trips.  Additionally, on a previous hunt, Plaintiff had helped a guide saddle the horse.

On September 9, 2000, the first day of the hunt, Plaintiff met Defendant Elite Outfitters at the trailhead, approximately 15 miles outside of Ruidoso, New Mexico.  At the trail head, Defendant Hughes or someone from Elite Outfitters, provided Plaintiff with a "Waiver and Release Agreement."  The Waiver and Release Agreement states as follows:

> I acknowledge that trail riding and/or wilderness activities have inherent risks, hazards and dangers for anyone, that cannot be eliminated, particularly in a wilderness environment.  I UNDERSTAND THAT THESE RISKS, HAZARDS AND DANGERS INCLUDE WITHOUT LIMITATION:
>
> 1. Activities involving mules and horses;
> 2. Activities in rugged country including encounters with wildlife, animals and insects;
> 3. Activities involving wilderness travel and/or camping;
> 4. Inclement weather conditions.
>
> I understand the risks, hazards and dangers described above and have had the opportunity to discuss them with Elite Outfitters.  I understand that these activities may require good physical conditioning and a degree of skill and knowledge.  I believe I have good physical conditioning and the degree of skill and knowledge necessary for me to engage in these activities safely.  I understand that I have responsibilities.  My participation in this activity is purely voluntary.  No one is forcing me to participate and I elect to participate in spite of the risks.  I AM VOLUNTARILY USING THE SERVICES OF ELITE OUTFITTERS WITH FULL KNOWLEDGE OF THE INHERENT RISKS, HAZARDS AND DANGERS INVOLVED AND HEREBY ASSUME AND ACCEPT ANY AND ALL RISKS OF INJURY, PARALYSIS OR DEATH.
>
> Lastly, I, for myself, my heirs, successors, executors and subrogees, hereby KNOWINGLY AND INTENTIONALLY WAIVE AND RELEASE, INDEMNIFY AND HOLD HARMLESS Elite Outfitters, their directors, officers, agents, employees and volunteers from and against any and all claims, actions, causes of action, liabilities, suits, expenses (including reasonable attorneys' fees) which are

> related to, arise out of, or are in any way connected with my participation in these activities, including, but not limited to , NEGLIGENCE of any kind or nature, whether foreseen or unforeseen, arising directly or indirectly out of any damage, loss, injury, paralysis, or death to me or my property as a result of engaging in these activities or the use of these services, animals or equipment, whether such damage, loss, injury, paralysis or death results from negligence of Elite Outfitters or from some other cause.  I, for myself, my heirs, my successors, executors and subrogees, further agree not to sue Elite Outfitters as a result of any injury, paralysis or harm suffered in connection with my use and participation in the activities of Elite Outfitters.
>
> I HAVE CAREFULLY READ, CLEARLY UNDERSTAND AND VOLUNTARILY SIGN THIS WAIVER AND RELEASE AGREEMENT;

Defs.' Ex. E.  Plaintiff, a licensed personal injury attorney, read and signed the document.  Defs.' Ex. B, Dep. of Michael Harkin at 6.  In addition, before leaving the trailhead, someone from Elite Outfitters asked Plaintiff if he had ridden before and he responded that he had.  *Id.* at 61.  Prior to the accident, Defendants did not observe Plaintiff having any problems riding the mules.  Defs.' Ex. F, Dep. of Danny Moore at 50.

On September 12, 2000, the fourth day of the hunt, Plaintiff was riding a mule named Lurch and was following behind a mule named Hank.  Lurch had a reputation for being a gentle mule without a history of problems or dangerous propensities.  Defs.' Ex. H, Dep. of Matt Schneberger at 49; Defs.' Ex. I, Report of Lar Thomas at 3; Defs.' Ex. J, Dep. of Johnny Hughes at 22; Defs.' Ex. C, Dep. of Brian Newell at 29-30.  Plaintiff rode Lurch from the base camp for approximately a mile over some tough terrain.  Defs.' Ex. H, Dep. of Lar Thomas at 35.  During the ride, on two occasions, Lurch nipped or nudged Hank on the flank and Hank kicked.  Defs.' Ex. B, Dep. of Michael Harkins at 87-88.  After the second kick, Lurch bolted into the wilderness. *Id.* at 89-90.  In an attempt to stop Lurch, Plaintiff pulled the reins as hard as he could but eventually bounced off of Lurch. *Id.* at 90-92.  Plaintiff testified that at the time of the accident the

stirrups on his saddle were too long. Defs.' Ex. B, Dep. of Michael Harkins at 99. However, the tack used on Lurch at the time of the accident was in good repair, fit well and was without defect. *Id.*, Defs.' Ex. I, Report of Lars Thomas at 2-3; Defs.' Ex. H, Dep. of Matt Schneberger at 48. Plaintiff did not inform his guide, Defendant Brian Newell, that his stirrups were too long or that they needed to be adjusted. Defs.' Ex. C, Dep. of Brian Newell at 80.

After the accident, Maurice Sowell, a registered nurse, examined Plaintiff at the camp. Defs.' Ex. K, Dep. of Maurice Sowell at 8. According to Mr. Sowell, Plaintiff's injuries were neither critical nor were they life threatening. *Id.* at 18. Additionally, on three different occasions, Mr. Sowell advised Plaintiff to get his neck evaluated and x-rayed at the emergency room at Lincoln County Medical Center when he got down. Defs.' Ex. K, Dep. of Maurice Sowell at 20-21; Defs.' Ex. B, Dep. of Michael Harkins at 108. Plaintiff was then led on a mule out of the camp. Defs.' Ex. B, Dep. of Michael Harkins at 106. On the way out of the wilderness, Plaintiff got off his mule to look at an elk that had been killed by one of the other hunters. Defs.' Ex. B, Dep. of Michael Harkins at 105.

On September 13, 2000, when Plaintiff arrived in Ruidoso, he did not seek medical attention at the Lincoln County Medical Center emergency room. Plaintiff chose to wait and be evaluated by his doctors in Houston, Texas. Defs.' Ex. B, Dep. of Michael Harkins at 108. On September 18, 2000, Plaintiff sought medical treatment from Dr. Bryan Williamson in Houston, Texas. Defs.' Ex. L. Plaintiff's doctors testified that any delay in Plaintiff's treatment did not exacerbate his condition. Defs.' Ex. M, Dep. of Dr. Sidney Schultz at 11-12; Defs.' Ex. N, Dep. of Dr. Jack Williamson at 14-15.

## II. Standard of Review

This Court will grant summary judgment when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant carries the burden of establishing there are no genuine issues of material fact, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970), but may discharge its burden by showing there is an absence of evidence to support the non-movant's case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). In making its summary judgment determination, the court looks at the pleadings and documentary evidence in the light most favorable to the non-movant, *Deepwater Invs., v. Jackson Hole Ski Corp.* 938 F.2d 1105, 1110 (10th Cir. 1991), and the movant must show beyond a reasonable doubt it is entitled to summary judgment, *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir. 1991). However, once the burden shifts to the non-movant, that party may not rest on its pleadings but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. *Celotex Corp.*, 477 U.S. at 324. However, "the mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48(1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* If the non-movant cannot make such a showing, after adequate time for discovery, summary judgment is mandated. *Id.* at 322.

### III. Discussion

Defendants contend Plaintiff's injuries were proximately caused by the mule's behavior and are the result of the inherent risks associated with equine activities. Accordingly, Defendants

argue they are immune from liability under the Act. Under the Act, "[n]o person, corporation or partnership is liable for personal injuries to or for the death of a rider that may occur as a result of the behavior of equine animals while engaged in any equine activities." N.M.Stat.Ann. § 42-13-4A (2001).

Plaintiff, on the other hand, contends the Act does not relieve Defendants of liability for their own negligence. Plaintiff relies on § 42-13-4C (1), (2) & (4) of the Act. Section 42-13-4C states in pertinent part:

> Nothing in the Equine Liability Act [42-13-1 to 42-13-5 NMSA 1978] shall be construed to prevent or limit the liability of the operator, owner, trainer or promoter of an equine activity who:
>
> (1) provided the equipment or tack, and knew or should have known that the equipment or tack was faulty and an injury was the proximate result of the faulty condition of the equipment or tack;
> (2) provided the equine and failed to make reasonable and prudent efforts to determine the ability of the rider to;
>   (a) engage safely in the equine activity; or
>   (b) safely manage the particular equine based on the rider's representations of his ability;
> (4) committed an act or omission that constitutes conscious or reckless disregard for the safety of a rider and an injury was the proximate result of that act or omission;

Under the first exception to the Act, liability may only be found where the defendant "provided the equipment or tack, and knew or should have known that the equipment or tack was faulty and an injury was the proximate result of the faulty condition of the equipment or tack." N.M.Stat.Ann. § 42-13-4C(1). Plaintiff claims the reason he was unable to control the mule when it initially bolted was that his stirrup leathers were "improperly adjusted and were too long to allow him to have sufficient leverage." Therefore, Plaintiff contends the "faulty tack" exception to the Act is

6

applicable. Moreover, Plaintiff argues that his injuries were not caused by equine behavior but by Defendants' negligence in not adjusting the stirrup leathers.

The Court disagrees. It is undisputed that Plaintiff did not observe any defects with the stirrups and that they were in good repair, without breaks, tears or defects. Defs.' Ex. B, Dep. of Michael Harkins at 99. Plaintiff alleges only that they were not properly adjusted. Moreover, Plaintiff never complained or alerted Defendants about the stirrups needing to be adjusted. In fact, Plaintiff rode about a mile on very rough and steep terrain before the accident. Plaintiff has also failed to show that the "improperly adjusted" stirrups were the proximate cause of his injuries. It is undisputed that Lurch bolted into the wilderness after being kicked by another mule, throwing Plaintiff off of him. It was the mule's behavior that was the proximate cause of Plaintiff's injuries. For the foregoing reasons, the Court finds that the "faulty tack" exception is not applicable to this case.

Next, Plaintiff contends Defendants were negligent in failing to assess "the extent of his experience or if he had any experience with mules." This exception to the Act provides that liability may only be found where the defendant, "provided the equine and failed to make reasonable and prudent efforts to determine the ability of the rider to: (a) engage safely in the equine activity; or (b) safely manage the particular equine based on the rider's representations of his ability." N.M.Stat.Ann. § 42-13-4C(2). The facts belie this contention. First, Plaintiff represented to Defendants that he had the skill and ability to safely engage in equine activities. At the trailhead, Plaintiff read and signed a Waiver and Release Agreement, representing that he had the degree of skill and knowledge to safely ride a mule. In addition, before leaving the trailhead, someone from Elite Outfitters asked Plaintiff if he had ridden before and he responded that he had.

7

Finally, Defendants had four days to observe and assess Plaintiff riding skills and his ability to manage a mule and saw nothing that caused them concern. Accordingly, the Court finds that the "failure to assess riding ability exception" does not apply to this case.

Finally, Plaintiff contends the "reckless disregard for the safety of a rider" exception applies. N.M.Stat.Ann. § 42-13-4C(4). Plaintiff argues Defendants were negligent in putting Hank and Lurch together. Plaintiff also contends Lurch should have been used as a pack mule and not a riding mule until more was known about how he would react in close proximity to other mules. However, in order for this exception to apply Plaintiff must show that, in putting the two mules together, Defendants acted in "conscious or reckless disregard for the safety" of Plaintiff. Under New Mexico law, reckless disregard means "something beyond mere negligence and something approaching willful or wanton misconduct." *Smith v. Meadows*, 56 N.M. 242, 253 (1952)(explaining reckless disregard as used in the context of guest statutes). In *Smith*, the Court explained reckless disregard of the rights of others as a willingness to inflict injury on another. *Id.* at 254. Plaintiff has failed to present any evidence that Defendants demonstrated a willingness to injure him by putting two mules together.

In addition, the purpose of the Act is "to encourage owners, trainers, operators and promoters to sponsor or engage in equine activities by providing that no person shall recover for injuries resulting from the risks **related to the behavior of equine animals** while engaged in any equine activities." N.M.Stat.Ann. § 42-13-2. The Act defines "behavior of equine animals" as "the propensity of an equine animal to kick, bite, shy, buck, stumble, bolt, rear, trample, be unpredictable or collide with other animals, objects or persons." N.M.Stat.Ann. § 42-13-3C. The behavior exhibited by Lurch and Hank, biting, kicking and unpredictability, falls within the

8

behavior of equine animals contemplated by the Act and is not a basis for finding that the reckless disregard exception applies. Accordingly, the Court will grant Defendants' Motion for Summary Judgment.

A judgment in accordance with this memorandum opinion will be entered.

JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE